## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation,<br><br>*Plaintiff,*<br>v.<br><br>JOHN DOES 1-2, CONTROLLING A COMPUTER NETWORK AND THEREBY INJURING PLAINTIFF AND ITS CUSTOMERS,<br><br>*Defendants.* | Civil Action No:<br><br>**FILED UNDER SEAL PURSUANT TO LOCAL RULE 5.1** |

## COMPLAINT

Plaintiff MICROSOFT CORP. ("Microsoft") hereby complains and alleges that JOHN DOES 1-2 (collectively "Defendants"), have established an Internet-based cyber-theft operation referred to as "Phosphorus."  Through Phosphorus, Defendants are engaged in breaking into the Microsoft accounts and computer networks of Microsoft's customers and stealing highly sensitive information.  To manage and direct Phosphorus, Defendants have established and operate a network of websites, domains, and computers on the Internet, which they use to target their victims, infect their computing devices, compromise the security of their networks, and steal sensitive information from them.  Internet domains used by Defendants to operate Phosphorus are set forth at **Appendix A** to this Complaint and are referred to as the "Command and Control Domains."  Microsoft alleges as follows:

### NATURE OF ACTION

1.      This is an action based upon: (1) The Computer Fraud and Abuse Act, 18

U.S.C. § 1030; (2) Electronic Communications Privacy Act, 18 U.S.C. § 2701; (3)

Trademark Infringement under the Lanham Act, 15 U.S.C. § 1114 *et seq*. (4) False Designation

of Origin under the Lanham Act, 15 U.S.C. § 1125(a); (5) Trademark Dilution under the Lanham

Act, 15 U.S.C. § 1125(c); (6) the Anticybersquatting Consumer Protection Act, 15 U.S.C. §

1125(d), (7) common law trespass to chattels; (8) conversion; (9) intentional interference with

contractual relationships; (10) unfair competition; and (11) unjust enrichment.  Microsoft seeks

injunctive and other equitable relief and damages against Defendants who operate and control a

network of computers known as the Phosphorus Command and Control Domains.  Defendants,

through their illegal activities involving Phosphorus, have caused and continue to cause

irreparable injury to Microsoft, its customers and licensees, and the public.

## PARTIES

2.      Plaintiff Microsoft is a corporation duly organized and existing under the laws of

the State of Washington, having its headquarters and principal place of business in Redmond,

Washington.

3.      John Doe 1 controls Phosphorus and the Phosphorus Command and Control

Domains in furtherance of conduct designed to cause harm to Microsoft, its customers and

licensees, and the public.  Microsoft is informed and believes and thereupon alleges that John

Doe 1 can likely be contacted directly or through third-parties using the information set forth in

**Appendix A**.

4.      John Doe 2 controls Phosphorus and the Phosphorus Command and Control

Domains in furtherance of conduct designed to cause harm to Microsoft, its customers and

licensees, and the public.  Microsoft is informed and believes and thereupon alleges that John

Doe 2 can likely be contacted directly or through third-parties using the information set forth in

**Appendix A**.

5.      Third parties VeriSign, Inc., VeriSign Information Services, Inc., and VeriSign Global Registry Services (collectively, "VeriSign") are the domain name registries that oversee the registration of all domain names ending in ".com," ".net" and ".name," and are located at 12061 Bluemont Way, Reston, Virginia  20190.

6.      Third party Public Interest Registry is the domain name registry that oversees the registration of all domain names ending in ".org," and is located at 1775 Wiehle Avenue, Suite 100, Reston, Virginia  20190.

7.      Third party .Club Domains, LLC is the domain name registry that oversees the registration of all domain names ending in ".club," and is located at 100 SE 3rd Ave. Suite 1310, Fort Lauderdale, Florida  33394.

8.      Third party Afilias Limited c/o Afilias USA, Inc. is the domain name registry that oversees the registration of all domain names ending in ".info" and ".mobi," and is located at 300 Welsh Road, Building 3, Suite 105, Horsham, Pennsylvania  19044.

9.      Third parties Binky Moon, LLC and Donuts Inc. (collectively "Donuts") are the domain name registries that oversee the registration of all domain names ending in ".network," and ".world," and are located at 5808 Lake Washington Blvd NE, Suite 300, Kirkland, Washington  98033.

10.     Third party Registry Services Corporation d/b/a RegistryPro is the domain name registry that oversees the registration of all domain names ending in ".pro," and is located at 425 West Randolph, 8th Floor, Chicago, Illinois  60606.

11.     Third parties Neustar, Inc. and Aruba PEC S.p.A are the domain name registry backend provider and domain name registry that oversee the registration of all domains ending in ".cloud."  Neustar, Inc. is located at 21575 Ridgetop Circle, Sterling, Virginia 20166 and Aruba PEC S.p.A. is located at Via Sergio Ramelli 8, 52100 Arezzo (AR), Italy.

12.     Third parties Neustar, Inc., dot Bid Limited and Global Registry Services Limited are the domain name registry backend provider and domain name registry that oversee the registration of all domains ending in ".bid."  Neustar, Inc. is located at 21575 Ridgetop Circle, Sterling, Virginia 20166.  dot Bid Limited is located at 2nd Floor, Leisure Island Business Centre, Ocean Village, GX111AA, Gibraltar.  Global Registry Services Limited is located at 327 Main Street, Gibraltar GX111AA.

13.     Set forth in **Appendix A** are the identities of and contact information for third party domain registries that control the domains used by the Defendants.

14.     On information and belief, John Does 1-2 jointly own, rent, lease, or otherwise have dominion over the Phosphorus Command and Control Domains and related infrastructure and through those control and operate Phosphorus.  Microsoft will amend this complaint to allege the Doe Defendants' true names and capacities when ascertained. Microsoft will exercise due diligence to determine Doe Defendants' true names, capacities, and contact information, and to effect service upon those Doe Defendants.

15.     Microsoft is informed and believes and thereupon alleges that each of the fictitiously named Doe Defendants is responsible in some manner for the occurrences herein alleged, and that Microsoft's injuries as herein alleged were proximately caused by such Defendants.

16.     On information and belief, the actions and omissions alleged herein to have been undertaken by John Does 1-2 were actions that Defendants, and each of them, authorized, controlled, directed, or had the ability to authorize, control or direct, and/or were actions and omissions that each Defendant assisted, participated in, or otherwise encouraged, and are actions for which each Defendant is liable.  Each Defendant aided and abetted the

actions of the other Defendant, as set forth below, in that each Defendant had knowledge of those actions and omissions, provided assistance and benefited from those actions and omissions, in whole or in part.  Each Defendant was the agent of each of the other Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and with the permission and consent of other Defendant.

## JURISDICTION AND VENUE

17.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises out of Defendants' violation of The Computer Fraud and Abuse Act (18 U.S.C. § 1030), Electronic Communications Privacy Act (18 U.S.C. § 2701), Lanham Act (15 U.S.C. §§ 1114, 1125), and the Anticybersquatting Consumer Protection Act (15 U.S.C. § 1125(d)).  The Court also has subject matter jurisdiction over Microsoft's claims for trespass to chattels, intentional interference with contractual relationships, unjust enrichment, unfair competition, and conversion pursuant to 28 U.S.C. § 1367.

18.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Microsoft's claims has occurred in this judicial district, because a substantial part of the property that is the subject of Microsoft's claims is situated in this judicial district, and because a substantial part of the harm caused by Defendants has occurred in this judicial district.  Defendants have conducted business in the District of Columbia and have utilized instrumentalities located in the District of Columbia to carry out the acts of which Microsoft complains.

19.     Defendants have affirmatively directed actions at the District of Columbia by directing deceptive electronic messages to users of Microsoft services located in the District of Columbia, by directing malicious computer code and instructions to Microsoft's

Windows operating system, the computing devices and high-value computer networks of individual users and entities located in the District of Columbia, in order to compromise the security of those systems and to steal sensitive information from those networks, all to the grievous harm and injury of Microsoft, its customers and licensees, and the public.

20.     Venue is proper in this judicial district under 28 U.S.C. § 1391(c) because Defendants are subject to personal jurisdiction in this judicial district.

## FACTUAL BACKGROUND

### Microsoft's Services and Reputation

21.     Microsoft® is a provider of the Windows® operating system and a variety of other software and services including Outlook®, Windows Live®, Hotmail®, OneDrive® and Office 365® trademarks.  Microsoft has invested substantial resources in developing high-quality products and services.  Due to the high quality and effectiveness of Microsoft's products and services and the expenditure of significant resources by Microsoft to market those products and services, Microsoft has generated substantial goodwill with its customers, establishing a strong brand and developing the Microsoft name and the names of its products and services into strong and famous world-wide symbols that are well-recognized within its channels of trade.  Microsoft has registered trademarks representing the quality of its products and services and its brand, including Microsoft, Windows, Outlook, Windows Live, Hotmail, OneDrive and Office 365.  Copies of the trademark registrations for the Microsoft, Outlook, Windows Live, Hotmail, OneDrive and Office 365 trademarks are attached as **Appendix B** to this Complaint.

### Phosphorus

22.     Phosphorus specializes in targeting, hacking into, and stealing sensitive information from high-value computer networks connected to the Internet.  Phosphorus

targets Microsoft customers in both the private and public sectors, including political dissidents, activist leaders, the Defense Industrial Base (DIB), journalists, and employees from multiple government agencies, including individuals protesting oppressive regimes in the Middle East.  Others in the security community who have researched this group of actors refer to the group by other names, including "APT 35," "Charming Kitten," and "Ajax Security Team."  The defendants have been linked to an Iranian hacking group or groups.

23.     Phosphorus hacks into a targeted computer network; installs software giving it long-term and surreptitious access to that network; monitors the victim's activity and conducts reconnaissance of the network; and ultimately locates and exfiltrates sensitive documents off of the network, including plans, memoranda, e-mails, voice mails, and other sensitive information.  Phosphorus has been active since 2013, and it poses a threat today and into the future.

24.     Phosphorus' *modus operandi* demonstrates skill, patience, and access to resources.  Phosphorus typically attempts to compromise the personal (not work) accounts of the targeted individuals through a technique known as "spear phishing."  Spear phishing attacks are conducted in the following fashion:  After researching a victim organization, the spear phisher will identify individuals associated with that organization through gathering publicly available information and by social engineering.  The spear phisher will then initiate communications with the victim by using names, companies, and/or contents that are familiar to the victim.  The ensuing communications exchanges are used to social engineer information, identify additional targets, entice a target into opening up a malicious attachment, and more.  Phosphorus has created fake social networking profiles to carry out such an attack.

25.     Another technique utilized by Phosphorus is to send a targeted individual an email specifically crafted to appear as if there is an issue with the targeted individual's account.

Phishing emails often use generic domain names that appear to be tied to account activity and that require input of credentials for authentication.  Phosphorus sends the targeted individual an email specifically crafted to appear as if there is an issue with the targeted individual's account. Phosphorus has used the domains listed in **Appendix A** to this Complaint in its command and control infrastructure.  The Phosphorus defendants sometimes also disguise their command and control domains by incorporating the names and trademarks of well-known companies and organizations, including Microsoft's "Microsoft" and Windows "Live" brands, as well as the "LinkedIn" brand.

26.     Phosphorus' use of Microsoft trademarks is meant to confuse victims into clicking on links controlled by the Phosphorus defendants.  When the user clicks on the links, they are taken to deceptive web pages that induce the victim to type in their Microsoft credentials, at which point the Phosphorus defendants obtain access to those credentials.  This will result in Phosphorus being able to log into the victim's account and access their email. Phosphorus can also download a copy of the victim's address book to be used for future targeting of additional intended victims.  Not having safe emails impacts Microsoft's brands and services. Customers expect Microsoft to provide safe and trustworthy products and services.  There is a great risk that Microsoft's customers, both individuals and the enterprises for which they work, may incorrectly attribute these problems to Microsoft's products and services, thereby diluting and tarnishing the value of these trademarks and brands.

27.     Phosphorus sends these emails from a variety of online email services.  As discussed above, there are multiple Phosphorus created domains mimicking Microsoft brands, and those domains are clearly designed to be included in spear phishing emails as links to websites that Phosphorus has set up in advance and which they control.  When a victim clicks on the link in the email, his or her computer is connected with the Phosphorus-controlled website.

The victim is then presented a copy of a webpage that appears to be a login page for a webmail provider of which the victim is a subscriber.  In fact, this is a fake login page that is designed to induce the user to type in their webmail credentials.  If the victim enters the correct credentials, at that point Phosphorus obtains the user's credentials and can thereafter access the users' webmail account to steal email content and other information.

28.    **Figures 1 and 2** show copies of webpages created by Phosphorus designed to mimic legitimate Microsoft Outlook login pages:



**Figure 1**



**Figure 2**

29.     Upon successful compromise of a victim account, Phosphorus will not only be able to log into the account and review the victims' emails, but may also delete the spear phishing email that they previously sent to the user in an attempt to obfuscate their activities.

30.     Phosphorus has targeted victims who are using Microsoft email services and has intruded into those accounts to steal information of Microsoft's users.  Figures 1 and 2 above demonstrate that Phosphorus is targeting users of Microsoft's Outlook email services.

31.     Phosphorus also uses an online control panel, at the domain confirm-session-identification.info, to create links sent to intended victims as well as to track successfully compromised victims who clicked on those links, typed in their credentials and had those credentials stolen by the defendants.  The control panel enables Phosphorus to monitor and control their access to victim accounts.  Phosphorus uses a unique ID (URL) for each targeted

user.  A redacted list of the users targeted can be seen in the email column in **Figure 3** below



**Figure 3**

32.     Phosphorus' email panel has a "Monitor" screen for tracking compromised users, as seen in the screenshot below (**Figure 4**):



**Figure 4**

33.     Phosphorus' email panel has a settings tab (**Figure 5**) which shows that when

users' credentials are compromised, the credentials stolen from Microsoft users and others are emailed to a particular email address.



**Figure 5**

34.     Phosphorus also intrudes upon and causes injury to Microsoft and Microsoft's customers by damaging the customers' computers and the software installed on their computers. In particular, the Phosphorus defendants have sent deceptive email messages to victims, which include links to websites from which the defendants install malicious software onto the victims' computers.

35.     The defendants refer to the malicious software as "Stealer."  Stealer, once installed, can record what the victim types on their keyboard, take screenshots of what is on the victim's computer screen, steal login credentials for instant messaging account (including

information about victims' Microsoft-owned "Skype" messaging accounts), email accounts, and other credentials.  The Stealer software is installed from, and stolen information may be transferred to, defendants using command and control domains such as those reflected in **Appendix A**.

36.     The installation of this malicious software damages the victim's computer and the Windows operating system on the victim's computer.  During the infection of a victim's computer, the malicious Stealer software makes changes at the deepest and most sensitive levels of the computer's Windows operating system.  The consequences of these changes are that the user's version of Windows is adulterated, and unknown to the user, has been converted into a tool to steal credentials and sensitive information from the user.  This inherently involves abuse of Microsoft's trademarks and brands, and deceives users by presenting an unauthorized, modified version of Windows to those users.  For example, the defendants create registry key paths bearing the Microsoft "Windows" trademark, within the Microsoft operating system, including, among others:  "C:\WINDOWS\system32\rundll32.exe" and "C:\ Documents and Settings\{USER}\ApplicationData\IntelRapidStart\AppTransferWiz.dll",#110

37.     As seen in **Figure 6** below, Phosphorus includes metadata within the Stealer malicious software that expressly misrepresents that the software is created by "Microsoft" and that the software is a "Process for Windows.



**Figure 6**

## **Harm To Microsoft And Microsoft Customers**

38.    Phosphorus irreparably harms Microsoft by damaging its reputation,

brands, and customer goodwill.  Microsoft has invested considerable resources in

developing high-quality products and services and has thereby cultivated significant

customer goodwill and globally-recognized trademarks.  Trademark registrations for marks infringed by the Phosphorus defendants are attached as **Appendix B**.

39.     Phosphorus' theft of sensitive data and personal information damages Microsoft's customers.  The malicious "Stealer" software damages a customer's computer by altering the normal and approved settings and functions of the victim's operating system, destabilizing it, and enabling unauthorized monitoring of the user and theft of their data.

40.     The "Stealer" software effectively morphs the trusted, Microsoft-trademarked Windows operating system into a tool of deception and theft.  This misleads Microsoft customers and causes extreme damage to Microsoft's reputation, brands, and trademarks.

41.     Microsoft and other members of the public must invest considerable time and resources investigating and remediating defendants' illicit intrusions.  Customers typically lack the technological skill and resources required to clean an infected end-user computer.

42.     The most vulnerable point in Phosphorus' operations are a number of Internet domains through which Phosphorus obtains victim credentials, logs into compromised accounts, and reviews sensitive information from victim accounts.  Granting Microsoft possession of these domains will cut off the means by which the Phosphorus defendants collect victim credentials.

## FIRST CLAIM FOR RELIEF

### Violation of the Computer Fraud & Abuse Act, 18 U.S.C. § 1030

43.     Microsoft incorporates by reference each and every allegation set forth in paragraphs 1 through 42 above.

44.     Defendants knowingly and intentionally accessed and continue to access protected computers without authorization and knowingly caused the transmission of information, code and commands, resulting in damage to the protected computers, the software residing thereon, and Microsoft.

45.     Defendants' conduct involved interstate and/or foreign communications.

46.     Defendants' conduct has caused a loss to Microsoft during a one-year period aggregating at least $5,000.

47.     Microsoft seeks injunctive relief and compensatory and punitive damages under 18 U.S.C. § 1030(g) in an amount to be proven at trial.

48.     As a direct result of Defendants' actions, Microsoft has suffered and continues to suffer irreparable harm for which there is no adequate remedy at law, and which will continue unless Defendants' actions are enjoined.

## SECOND CLAIM FOR RELIEF

**Violation of Electronic Communications Privacy Act, 18 U.S.C. § 2701**

49.     Microsoft incorporates by reference each and every allegation set forth in paragraphs 1 through 48 above.

50.     Microsoft's Windows operating system, Microsoft's customers' computers running such software, and Microsoft's Outlook, Windows Live, Hotmail, OneDrive and Office 365 services are facilities through which electronic communication service is provided to Microsoft's users and customers.

51.     Defendants knowingly and intentionally accessed the Windows operating system, Microsoft's customers' computers running such software, and Microsoft's services, including one or more of Outlook, Windows Live, Hotmail, OneDrive and Office 365 services without authorization or in excess of any authorization granted by Microsoft or any other party.

52.     Through this unauthorized access, Defendants intercepted, had access to, obtained and altered authorized access to, wire electronic communications transmitted via Microsoft's Windows operating system, computers running such software, and Microsoft's

Outlook, Windows Live, Hotmail, OneDrive and Office 365 services.

53.     Microsoft seeks injunctive relief and compensatory and punitive damages in an amount to be proven at trial.

54.     As a direct result of Defendants' actions, Microsoft has suffered and continues to suffer irreparable harm for which no adequate remedy at law exists, and which will continue unless Defendants' actions are enjoined.

### THIRD CLAIM FOR RELIEF

**Trademark Infringement under the Lanham Act–15 U.S.C. § 1114 *et seq*.**

55.     Microsoft incorporates by reference each and every allegation set forth in paragraphs 1 through 54 above.

56.     Defendants have used Microsoft's trademarks in interstate commerce, including Microsoft's federally registered trademarks for the word marks Microsoft, Windows, Outlook, Windows Live, Hotmail, OneDrive and Office 365.  By doing so, Defendants are likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of the fake and unauthorized versions of the Windows operating system and the Outlook, Windows Live, Hotmail, OneDrive and Office 365 services.

57.     As a result of their wrongful conduct, Defendants are liable to Microsoft for violation of the Lanham Act.

58.     Microsoft seeks injunctive relief and compensatory and punitive damages in an amount to be proven at trial.

59.     As a direct result of Defendants' actions, Microsoft has suffered and continues to suffer irreparable harm for which it has no adequate remedy at law, and which will continue unless Defendants' actions are enjoined.

60.     Defendants' wrongful and unauthorized use of Microsoft's trademarks to

promote, market, or sell products and services constitutes trademark infringement pursuant to 15 U.S.C. § 1114 *et seq*.

## FOURTH CLAIM FOR RELIEF

### False Designation of Origin under the Lanham Act–15 U.S.C. § 1125(a)

61.    Microsoft incorporates by reference each and every allegation set forth in paragraphs 1 through 60 above.

62.    Microsoft's trademarks are distinctive marks that are associated with Microsoft and exclusively identify its businesses, products, and services.

63.    Defendants make unauthorized use of Microsoft's trademarks.  By doing so, Defendants create false designations of origin as to tainted Microsoft products that are likely to cause confusion, mistake, or deception.

64.    As a result of their wrongful conduct, Defendants are liable to Microsoft for violation of the Lanham Act, 15 U.S.C. § 1125(a).

65.    Microsoft seeks injunctive relief and compensatory and punitive damages in an amount to be proven at trial.

66.    As a direct result of Defendants' actions, Microsoft has suffered and continues to suffer irreparable harm for which they have no adequate remedy at law, and which will continue unless Defendants' actions are enjoined.

## FIFTH CLAIM FOR RELIEF

### Trademark Dilution under the Lanham Act–15 U.S.C. § 1125(c)

67.    Microsoft incorporates by reference each and every allegation set forth in paragraphs 1 through 66 above.

68.    Microsoft's trademarks are famous marks that are associated with Microsoft and exclusively identify its businesses, products, and services.

69.     Defendants make unauthorized use of Microsoft's trademarks.  By doing so, Defendants are likely to cause dilution by tarnishment of Microsoft's trademarks.

70.     Microsoft seeks injunctive relief and compensatory and punitive damages in an amount to be proven at trial.

71.     As a direct result of Defendants' actions, Microsoft has suffered and continues to suffer irreparable harm for which they have no adequate remedy at law, and which will continue unless Defendants' actions are enjoined.

## SIXTH CLAIM FOR RELIEF

### Cybersquatting under the Anti-Cybersquatting Consumer Protection Act–15 U.S.C. §1125(d)

72.     Microsoft re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 71 above.

73.     Microsoft's trademarks were distinctive at the time Defendants registered the command and control domains and remain distinctive today.

74.     Microsoft's trademarks were famous at the time Defendants registered the command and control domains and remain famous today.

75.     The command and control domains are confusingly similar to or dilutive of Microsoft's trademarks.

76.     Defendants have registered, trafficked in, and/or used the command and control domains with bad faith with intent to profit from Microsoft's trademarks.

77.     As a result of their wrongful conduct, Defendants are liable to Microsoft for violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

## SEVENTH CLAIM FOR RELIEF

### Common Law Trespass to Chattels

78.     Microsoft incorporates by reference each and every allegation set forth in paragraphs 1 through 77 above.

79.     Defendants have used a computer and/or computer network, without authority, with the intent to cause physical injury to the property of another.

80.     Defendants have, without authority, used a computer and/or computer network, without authority, with the intent to trespass on the computers and computer networks of Microsoft and its customers.

81.     Defendants' actions in operating Phosphorus result in unauthorized access to Microsoft's Windows operating system and its Outlook, Windows Live, Hotmail, OneDrive and Office 365 services, and the computers on which such programs and services run, and result in unauthorized intrusion into those computers.

82.     Defendants intentionally caused this conduct and this conduct was unlawful and unauthorized.

83.     Defendants' actions have caused injury to Microsoft and have interfered with the possessory interests of Microsoft over its software.

84.     Microsoft seeks injunctive relief and compensatory and punitive damages in an amount to be proven at trial.

85.     As a direct result of Defendants' actions, Microsoft has suffered and continues to suffer irreparable harm for which no adequate remedy at law exists, and which will continue unless Defendants' actions are enjoined.

## EIGHTH CLAIM FOR RELIEF

### Conversion

86.     Microsoft incorporates by reference each and every allegation set forth in paragraphs 1 through 85 above.

87.     Microsoft owns all right, title, and interest in its Windows, Outlook, Windows Live, Hotmail, OneDrive and Office 365 software and services.  Microsoft licenses its software and services to end-users.  Defendants have interfered with, unlawfully and without authorization, and dispossessed Microsoft of control over its Windows, Outlook, Windows Live, Hotmail, OneDrive and Office 365 software and services.

88.     Defendants have, without authority, used a computer and/or computer network, without authority, with the intent to remove, halt, or otherwise disable computer data, computer programs, and/or computer software from a computer or computer network.

89.     Defendants have, without authority, used a computer and/or computer network, without authority, with the intent to exfiltrate documents or cause a computer to malfunction.

90.     Microsoft seeks injunctive relief and compensatory and punitive damages in an amount to be proven at trial.

91.     As a direct result of Defendants' actions, Microsoft suffered and continues to suffer irreparable harm for which no adequate remedy at law exists, and which will continue unless Defendants' actions are enjoined.

## NINTH CLAIM FOR RELIEF

### Intentional Interference with Contractual Relationships

92.     Microsoft incorporates by reference each and every allegation set forth in paragraphs 1 through 91 above.

93.     Microsoft has valid and subsisting contractual relationships with licensees of its Windows, Outlook, Windows Live, Hotmail, OneDrive and Office 365 software and services. Microsoft's contracts confer economic benefit on Microsoft.

94.     Defendants' conduct interferes with Microsoft's contractual relationships by impairing, and in some instances destroying, the products and services Microsoft provides to its

customers.  On information and belief, Defendants know that their conduct is likely to interfere with Microsoft's contracts and to deprive Microsoft of the attendant economic benefits.

95.     On information and belief, Microsoft has lost or is likely to lose licensees due to Defendants' conduct.

96.     Defendants' conduct has caused Microsoft economic harm. Microsoft seeks injunctive relief and compensatory and punitive damages in an amount to be proven at trial.

97.     As a direct result of Defendants' actions, Microsoft has suffered and continues to suffer irreparable harm for which no adequate remedy at law exists, and which will continue unless Defendants' actions are enjoined.

## TENTH CLAIM FOR RELIEF

### Unfair Competition

98.     Microsoft incorporates by reference each and every allegation set forth in paragraphs 1 through 97 above.

99.     The acts of Defendants complained of herein constitute unfair competition at the expense of Microsoft in violation of the common law.  Defendants used, without authorization or license, Microsoft's trademarks in a deceptive manner likely to mislead customers into falsely believing Defendants' conduct was that of Microsoft.

100.    Defendants' actions have irreparably injured Microsoft by tarnishing its reputation with its customers.  Microsoft has cultivated good-will with customers at great expense over many years.

## ELEVENTH CLAIM FOR RELIEF

### Unjust Enrichment

101.    Microsoft incorporates by reference each and every allegation set forth in paragraphs 1 through 100 above.

102.     The acts of Defendants complained of herein constitute unjust enrichment of the Defendants at the expense of Microsoft in violation of the common law.  Defendants used, without authorization or license, software belonging to Microsoft to facilitate unlawful conduct inuring to the benefit of Defendants.  In this manner, Microsoft conferred a benefit on the Defendants.

103.     Defendants retained the benefit of and profited unjustly from their unauthorized and unlicensed use of Microsoft's intellectual property.

104.     Upon information and belief, Defendants had an appreciation and knowledge of the benefit they derived from their unauthorized and unlicensed use of Microsoft's intellectual property.

105.     Retention by the Defendants of the benefit and profits they derived from their malfeasance would be inequitable and unjust.

106.     Microsoft seeks injunctive relief and compensatory and punitive damages in an amount to be proven at trial.

107.     As a direct result of Defendants' actions, Microsoft suffered and continues to suffer irreparable harm for which no adequate remedy at law exists, and which will continue unless Defendants' actions are enjoined.

## PRAYER FOR RELIEF

WHEREFORE, Microsoft prays that the Court:

1.     Enter judgment in favor of Microsoft and against the Defendants.

2.     Declare that Defendants' conduct has been willful and that Defendants have acted with fraud, malice, and oppression.

3.     Enter a preliminary and permanent injunction enjoining Defendants and their officers, directors, principals, agents, servants, employees, successors, and assigns, and all

persons and entities in active concert or participation with them, from engaging in any of the activity complained of herein or from causing any of the injury complained of herein and from assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activity complained of herein or from causing any of the injury complained of herein.

4.       Enter a preliminary and permanent injunction giving Microsoft control over the domains used by Defendants to cause injury and enjoining Defendants from using such instrumentalities.

5.       Enter judgment awarding Microsoft actual damages from Defendants adequate to compensate Microsoft for Defendants' activity complained of herein and for any injury complained of herein, including but not limited to interest and costs, in an amount to be proven at trial.

6.       Enter judgment disgorging Defendants' profits.

7.       Enter judgment awarding enhanced, exemplary and special damages, in an amount to be proven at trial.

8.       Enter judgment awarding attorneys' fees and costs, and order such other relief that the Court deems just and reasonable.

Dated: March 14, 2019          Respectfully submitted,


                               */s/ Julia R. Milewski*
                               Julia R. Milewski (D.C. Bar No. 1008678)
                               Justin D. Kingsolver (D.C. Bar. No. 1033806)
                               Matthew B. Welling (*pro hac vice* pending)
                               CROWELL & MORING LLP
                               1001 Pennsylvania Avenue NW
                               Washington DC 20004-2595
                               Telephone:  (202) 624-2500
                               Fax:        (202) 628-5116
                               jmilewski@crowell.com
                               jkingsolver@crowell.com
                               mwelling@crowell.com

                               Gabriel M. Ramsey (*pro hac vice* pending)
                               CROWELL & MORING LLP
                               3 Embarcadero Center, 26th Floor
                               San Francisco, CA 94111
                               Telephone:  (415) 986-2800
                               Fax:        (415) 986-2827
                               gramsey@crowell.com

                               Richard Domingues Boscovich (*pro hac vice* pending)
                               MICROSOFT CORPORATION
                               One Microsoft Way
                               Redmond, WA 98052-6399
                               Telephone: (425) 704-0867
                               Fax:        (425) 936-7329
                               rbosco@microsoft.com

                               *Attorneys for Plaintiff Microsoft Corp.*